610 F.2d 1128
 7 O.S.H. Cas.(BNA) 1880, 1979 O.S.H.D. (CCH) P 24,027
 The BABCOCK AND WILCOX COMPANY, Appellant,
v.
Ray MARSHALL, Secretary of Labor, and Charles A. Straw, OSHA
Area Director United Steelworkers of America,
AFL-CIO and Local 1082, United
Steelworkers of America,
Intervenors Defendants,
and
Occupational Safety and Health Review Commission, Intervenor
Defendant.
 
 No. 79-1641.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 5, 1979.
Decided Nov. 16, 1979.
 Richard I. Thomas (argued), Jane A. Lewis, Thorp, Reed & Armstrong, Pittsburgh, Pa., for appellant; Francis Carling, Sullivan & Cromwell, New York City, of counsel.
 Carin A. Clauss, Sol. of Labor, Benjamin W. Mintz, Associate Sol. for OSHA (argued), Allen H. Feldman, Acting Counsel for Appellate Litigation, Charles I. Hadden, Thomas L. Holzman, Attys., Washington, D. C., Marshall Harris, Regional Sol., U. S. Department of Labor, Philadelphia, Pa., for Secretary of Labor.
 James D. English (argued), Mary-Win O'Brien, Pittsburgh, Pa., for United Steelworkers of America, AFL-CIO and Local Union 1082.
 Stuart E. Schiffer, Acting Asst. Atty. Gen., Washington, D. C., Robert J. Cindrich, U. S. Atty., Pittsburgh, Pa., Ronald R. Glancz, Marleigh Dover Lang (argued), Attys., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D. C., for Occupational Safety & Health Review Commission; Bernard Kleiman, Chicago, Ill., Robert C. Gombar, Gen. Counsel, Earl R. Ohman, Jr., Asst. Gen. Counsel, Dean E. Swartz, Andrea C. Casson, Attys., OSH Review Commission, Washington, D. C., of counsel.
 Before ADAMS, HUNTER and HIGGINBOTHAM, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 In Marshall v. Barlow's, Inc., 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), the Supreme Court declared that the Fourth Amendment stands between an employer and the use of compliance inspections by the agency charged with enforcing the Occupational Safety and Health Act (the Act).[1] From the time of that decision, numerous controversies have arisen over the standards for administrative probable cause[2] and over the procedures for issuing inspection warrants that must be satisfied before officers of the Occupational Safety and Health Administration (OSHA) may enter the workplace.[3]
 
 
 2
 The primary focus of the present case, and of In re Establishment Inspection of Whittaker Corp., decided today by a different panel of this Court,[4] is a dispute regarding jurisdiction and institutional competence to decide challenges to inspection warrants once they have been executed. This additional complication in the overall conflict surrounding OSHA inspections exists because the Act not only established new standards for conditions at the worksite and a new agency to administer the Act, but also established an administrative tribunal to adjudicate challenges to OSHA enforcement.
 
 
 3
 Specifically, the appeal sub judice presents the question, given divergent answers by three courts of appeals,[5] whether a company must exhaust its remedies in the administrative tribunal before it may seek relief in the federal courts by raising constitutional challenges to OSHA inspections. In a memorandum order dismissing a claim by a plant owner for declaratory and injunctive relief, as well as its motion to quash an inspection warrant, the district court in this proceeding held that the administrative route must be taken in the first instance. We affirm for the reasons set out below.
 
 I.
 
 4
 The Babcock & Wilcox Company (Babcock) operates several large manufacturing plants in Ambridge and Beaver Falls, Pennsylvania. Representatives of OSHA's Pittsburgh office made three separate inspections of these plants in August and September, 1978. Each inspection was triggered by a complaint of unsafe conditions by an employee of Babcock, and each was effected by obtaining an Ex parte warrant from a United States Magistrate.
 
 
 5
 OSHA received the first complaint which was in writing and signed on August 4, 1978. The complaint stated that cranes in several areas of the Ambridge plant had unguarded couplings, exposed electrical equipment, and worn brakes; that tubes were piled unsafely; that oxygen and acetylene tanks were stored together; and that employees were climbing twenty-foot-high racks without safety equipment. Several specific areas throughout the plant where hazards existed were mentioned, and the employee charged that these hazards immediately threatened death or serious physical harm. Officials in the Pittsburgh office decided that the matter merited an inspection and assigned a compliance office for the task;[6] Babcock denied him entry. On OSHA's request, a magistrate issued a warrant authorizing inspection of the entire Ambridge plant.
 
 
 6
 A second complaint was received on August 28 by way of a telephone call from a Babcock employee charging unsafe conditions in the Hot Mill and Oil Well Tubing areas of the Ambridge plant. The third complaint, written and signed, alleged unsafe conditions in the East Works Department of the Beaver Falls plant. In response to the second complaint, OSHA sent a compliance officer to inspect the Ambridge plant and Babcock again denied entry. The inspection warrant subsequently obtained by OSHA was limited, by the magistrate's handwriting, to the Hot Mill and Oil Well Tubing Department at Ambridge. Because of the unsuccessful attempts to gain entry without warrants following the first two complaints, the OSHA officials secured a warrant after the third complaint without first attempting a consensual search. This last search warrant was limited by a notation on the face of the warrant made by the magistrate, to the East Works Department of the Beaver Falls plant.
 
 
 7
 Inspections pursuant to the warrants were made in late August and September. There is some disagreement whether all three inspections were "wall to wall" (covering the entire plant). Babcock contends that the scope of the last two warrants was not disclosed, nor were the limitations of the warrants observed, OSHA insists that its inspection officers complied with the limitations in the warrants.
 
 
 8
 Each search led to the issuance of citations for violations of the Act, and Babcock exercised in a timely fashion its right to contest the citations so as to initiate an administrative review process.[7] The objections to the citations were assigned to administrative law judges of the Occupational Safety and Health Review Commission (Review Commission), an independent tribunal and an intervenor in this appeal. Babcock's first challenge was referred to an administrative law judge on December 11, 1978, and on December 18, the parties were directed to commence a settlement conference. A hearing, originally set for March 12, 1979, was rescheduled for May 9 in order that the parties could continue discovery.
 
 
 9
 On April 30, Babcock filed suit in the district court to quash the three inspection warrants, and on May 3, filed a complaint for declaratory and injunctive relief. The complaint alleged that the warrants violated the Fourth Amendment because they were obtained Ex parte and without probable cause. The district court was asked to declare § 8(a) of the Act[8] unconstitutional to the extent that it allowed warrants to be granted Ex parte and to the extent that it allowed warrants to issue without probable cause and without proper limitations as to scope. Babcock also requested that the evidence obtained from the inspections be suppressed and that OSHA be enjoined from further litigation based on the challenged inspections.
 
 
 10
 The district court denied as moot Babcock's motion to quash the warrants, and dismissed its complaint for failure to exhaust administrative remedies. Babcock appealed and, on its motion, we stayed the administrative review process until disposition of this proceeding.
 
 II.
 
 11
 An issue not raised by the parties, but which we are obliged to consider on our own initiative because it is jurisdictional, is the appealability of the district court's denial of Babcock's motion to quash the warrant. Because the motion was made after the warrant was fully executed, the order rejecting it is in an odd procedural posture. A denial of a motion to quash an inspection warrant should no more be appealable than is a denial of a motion to quash a grand jury subpoena, which has long been held to be not final and therefore not appealable.[9] "Such an order generally lacks finality because it leaves to the subpoenaed party the decision whether or not to comply with the subpoena; and if that party does not comply it leaves to the other party the decision whether or not it is worthwhile to seek a citation for contempt in order to compel disclosure." In re Grand Jury Subpoena for New York State Income Tax Records, 607 F.2d 566, 569 (2d Cir. 1979). In this case, of course, Babcock could not be held in contempt after a denial of its motion to quash, because there was nothing more that Babcock could be ordered to do, for the warrant had already been executed.[10]
 
 
 12
 Continuing the analogy of inspection warrants to subpoenas, we believe that this appeal would come within the exception to nonappealability noted by Justice Frankfurter in Cobbledick v. United States, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940). Cobbledick distinguished a denial of a motion to quash a grand jury subpoena, generally held to be not appealable, from a proceeding in federal court to enforce or quash an administrative subpoena, which
 
 
 13
 may be deemed self-contained, so far as the judiciary is concerned as much so as an independent suit in equity in which appeal will lie from an injunction without the necessity of waiting for disobedience. After the court has ordered a recusant witness to testify before the Commission, there remains nothing for it to do. Not only is this true with respect to the particular witness whose testimony is sought; there is not, as in the case of a grand jury or trial, any further judicial inquiry which would be halted were the offending witness permitted to appeal. The proceeding before the district court is not ancillary to any judicial proceeding. So far as the court is concerned, it is complete in itself.
 
 
 14
 Id. at 330, 60 S.Ct. at 543. See In re Restland Memorial Park, 540 F.2d 626, 627 n.3 (3d Cir.1976); Cf. O'Connor v. O'Connell, 253 F.2d 365, 365-66 (1st Cir. 1958) (order directing compliance with administrative subpoena held final and therefore appealable). In this case, as well, "there remains nothing for (the district court) to do." We therefore conclude that the order in this case is appealable.
 
 III.
 
 15
 As we have stated, Babcock's motion to quash the inspection warrant was a somewhat novel approach, inasmuch as the warrant had long since been executed. Because the inspection had been completed and the constitutional injury to Babcock if an injury indeed occurred had been fully accomplished,[11] the warrant could not be recalled or quashed.[12] The motion was thus moot when considered by the district court.
 
 
 16
 This conclusion as to a motion to quash a warrant already executed at the time of the motion may be compared with the result when such a motion is made before execution. As we have held in In re Establishment Inspection of Whittaker Corp., 610 F.2d 1141 (3d Cir. 1979), in which an inspection occurred after the district court's ruling on a motion to quash, but before the appeal was heard, the following factors will be weighed in considering whether a complaint with elements of mootness should nevertheless be adjudicated: "(1) whether the appellant has expeditiously taken all steps to perfect the appeal before the dispute becomes moot, (2) whether the trial court's order will have collateral consequences, and (3) whether the dispute is of such a nature that it is capable of repetition yet evading review." Id. at 1144.
 
 
 17
 These factors are also relevant in considering mootness in a district court proceeding, and none of them is evident in this case. Far from acting expeditiously to prevent the issue it now presses from becoming a Fait accompli, Babcock waited over seven months after the last disputed inspection occurred before filing its motion in the district court. Moreover, unlike the Whittaker appeal in which the district court denied a motion to quash, held the company in contempt, and ordered it to purge the contempt by allowing an inspection, the court order here has no legal consequences. The citations in this case are a consequence of the inspection, which had already occurred, as compared with the situation in Whittaker where the court order itself caused the inspection to occur.[13] Finally, as we held in Whittaker, there is nothing in the nature of the present altercation that will make future ones of its type evade review. The dispute here, as in Whittaker, evades review in this Court at this time because of the appellant's lack of prompt action.
 
 
 18
 Rather than indulge in the somewhat futile gesture of considering whether an already executed warrant should be quashed, we shall, as did the district court in In re Worksite Inspection of Quality Products,[14] treat the motion to quash as simply a request to suppress evidence arising from the inspections. Indeed, such a request was specifically included in Babcock's prayer for relief. It will then be necessary to consider whether the appropriate forum for such a decision, in the first instance, is the district court or the Review Commission, for adjudication of this matter is constrained by the doctrine of exhaustion of administrative remedies to the same extent as is Babcock's request for declaratory and injunctive relief.
 
 IV.
 
 19
 It is well established that the principle proclaiming that "no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted"[15] applies to the legislation in question here.[16] Babcock does not question the soundness of the general doctrine of exhaustion of administrative remedies, but contends that it is inapplicable here for two reasons. First, Babcock asserts that the present proceeding does not involve judicial interruption of the administrative process, but just the reverse. The warrant, Babcock continues, was issued by a magistrate acting as an adjunct to the federal judiciary.[17] Magistrates operate under the general supervision of district judges,[18] and it is therefore desirable, Babcock asserts, that district judges review the decisions of magistrates in the first instance.[19] For an administrative tribunal to pass on the propriety of the magistrate's action, the argument proceeds, is to usurp the judicial role. Alternatively, Babcock urges that this case falls squarely within well-recognized exceptions to the exhaustion doctrine.
 
 
 20
 Babcock's argument incorrectly characterizes which branch of government is engaged in a continuing process and which is only involved in a discrete, collateral adjudication. As part of its enforcement effort, OSHA seeks warrants to inspect worksites when consensual inspection cannot be obtained. The judgment at this point of a "neutral and detached magistrate" is required to protect the privacy of citizens from over-zealous enforcement.[20] Direct review of the issuance of a civil warrant may be obtainable before the inspection by resisting entry, moving to quash the warrant, risking contempt, and if necessary acting expeditiously to appeal. Babcock did not take such steps. It did not move swiftly to preserve its rights and prevent what it considered to be an illegal search. Babcock's conceptualization of the Review Commission proceedings interrupting judicial review particularly lacks credibility because Babcock did not even move promptly to obtain judicial protection from the use of the evidence secured in the allegedly illegal search. The worksite inspections were completed in September 1978, and Babcock did not attempt to quash the inspection warrants until approximately seven months later.
 
 
 21
 Contrary to Babcock's contention, illegal OSHA searches will not inevitably evade review; they may be preserved for determination by the district courts if the plant operator is willing to risk civil contempt and moves expeditiously to obtain full judicial review before the warrant is executed. This may seem to be a cruel choice to thrust on the company, but the alternative would be to indulge both in a presumption that magistrates do not perform their duties correctly and that there will not be probable cause for issuing inspection warrants in a fair number of these cases.[21]
 
 
 22
 The Article III objections stressed by Babcock similarly mischaracterize the process. The Review Commission will not sit in direct review of the decision of the magistrate. As already indicated, the decision to issue the inspection warrant is complete and cannot be negated.[22] If the challenge is raised by Babcock, the problem for the Review Commission will be whether to use the evidence obtained from the inspection. In deciding whether to use this evidence the Review Commission must of course, makes its own judgment as to the propriety of the warrant, but such a determination does not reverse the magistrate's action, nor does it contravene a judicial order. The OSHA official would not be in contempt if he were to decide not to execute a warrant signed by the magistrate,[23] and an administrative tribunal does not flout the authority of the judiciary by refusing to consider evidence that has been obtained pursuant to a warrant issued by a judge or magistrate.
 
 
 23
 Babcock contends that it is entitled to adjudication by an Article III court of its constitutional rights, but the question in this case is not Whether the issues may be heard by an Article III court, but When.[24] Babcock may appeal to this Court as of right from any adverse determination by the Review Commission.[25] The crux of the matter, then, is a claim by Babcock that the factual record for constitutional claims must be developed by an Article III district court rather than by the Article I Review Commission. But that proposition has been decisively rejected by the courts, because it would seriously impede the use and effectiveness of administrative tribunals in the many statutory schemes in which they operate. In Bethlehem Steel Corp. v. Occupational Safety and Health Review Commission, 607 F.2d 871 at 876 (3d Cir. 1979), this Court held:
 
 
 24
 Conceding, arguendo, that an administrative agency is not ordinarily considered the appropriate forum for the resolution of constitutional claims, we think there are compelling reasons for insisting that fourth amendment claims for the suppression of evidence in OSHA enforcement cases be tendered first to the Commission. Those claims in most cases, if not all, require the development of a factual record concerning such issues as consent, waiver, and emergency. Under the enforcement and review scheme of the Occupational Safety and Health Act . . . the Commission is the only tribunal available for the development of a factual record. If we were to hold that these constitutional arguments need not be presented to the Commission, the alternative would be either separate litigation in a district court, which has facilities for making a record, or fact-finding in this court, which lacks such facilities. Assuming we could find a statutory justification for either course, neither is attractive. Thus we hold that fourth amendment claims must be presented, in the first instance, to the Commission.[26]
 
 
 25
 In sum, the ongoing procedure here is that initiated by OSHA in the Review Commission, not that of the district court in supervising one of its magistrates. Any constitutional conflict between two branches of government over the propriety of the warrant is mostly imaginary, while the conflict with the statutory scheme and administrative exigencies if exhaustion is not required will be quite real. The principle of exhaustion therefore applies, and we now pass to the question whether Babcock comes within any of its exceptions. To decide this question it is necessary to examine the constitutional and policy rationales for the doctrine.
 
 V.
 
 26
 Constitutionally, exhaustion is grounded in a concept of judicial self-restraint, admonishing courts that constitutional issues should not be decided, and legislation should not be invalidated, if a controversy may be resolved on some other ground.[27] When, as here, action is deferred for consideration to an independent administrative tribunal, rather than to the agency itself, the doctrine also exemplifies deference within the constitutional framework to Congress's decision as to the proper forum for the initial resolution of disputes under its statute.[28]
 
 
 27
 Requiring the exhaustion of administrative remedies also ensures the most efficient use of judicial resources because the Review Commission will develop a factual record so that, if the court must decide on constitutional grounds, it will be able to do so with the benefit of a full factual context. If the tribunal decides favorably to the aggrieved party on nonconstitutional grounds, the court will find it unnecessary to proceed with constitutional adjudication.
 
 
 28
 As a judicially created doctrine, exhaustion of administrative remedies is subject to judicially created exceptions.[29] Thus, this Court has declined to require exhaustion when resort to administrative remedies would be futile,[30] when agency involvement "clearly and unambiguously violates statutory or constitutional rights,"[31] or "if the prescribed administrative procedure is clearly shown to be inadequate to prevent irreparable injury."[32] In this respect, exhaustion of administrative remedies has not been required when the administrative procedure itself is alleged to violate a constitutional right E. g., when an administrative procedure violates due process by not affording a claimant prior notice and a hearing[33] or by subjecting a party to "vexatious and harassing" prosecutions by refusing to apply collateral estoppel.[34] Similarly, in McKart v. United States, 395 U.S. 185, 197, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969), the Supreme Court did not require exhaustion of administrative remedies when inflexible application of the rule would bar a defendant from raising his only defense to a criminal prosecution.
 
 
 29
 In Weyerhauser Co. v. Marshall,[35] the Court of Appeals for the Seventh Circuit held that none of the factors favoring the exhaustion requirement was applicable to a challenge to the validity of an inspection warrant that had already been executed. It stated that no factual record was required, since "the court need only look to the face of the warrant application to decide whether it met the requirements of administrative probable cause."[36] The Seventh Circuit discounted the possibility of the Review Commission's ruling on the probable cause issue because the Commission had never done so before.
 
 
 30
 Whatever the policy of the Review Commission may have been at the time Weyerhauser was handed down, it is now established that the Review Commission will consider challenges to inspection warrants.[37] Before the Supreme Court's opinion in Barlow's, the Review Commission had declined to rule on challenges to warrants, because it believed that to do so would require it to pass, at least implicitly, on the constitutionality of its underlying statute,[38] which had authorized warrantless searches.
 
 
 31
 Now that Barlow's has determined that inspections pursuant to 28 U.S.C. § 657(a) must satisfy the Fourth Amendment both as to the necessity of a warrant for nonconsensual inspections and as to the demonstration of probable cause the Review Commission may consider motions to suppress evidence without acting beyond its jurisdiction. It may do this, consonant with its limited role under the Constitution, not by reviewing the constitutionality of its statute but by interpreting the statute[39] and by applying constitutional principles to specific facts.[40]
 
 
 32
 We do not, of course, express any opinion at this time on the sharply contested question whether the exclusionary rule applies to OSHA enforcement.[41] We simply point out that resolution of that issue has no bearing on our decision that exhaustion of administrative remedies is required in this case. Regardless of how the exclusionary rule controversy is ultimately resolved, Babcock will be no worse off by filing its motion to suppress in the Review Commission rather than in the district court. The decision of either forum is reviewable in this Court. Babcock may even be in a better posture before the Review Commission, for that tribunal may decide, independently of any decision by the federal courts as to the applicability of the exclusionary rule to administrative proceedings, to apply the rule as a matter of its own policy pursuant to its supervisory power over the Act's enforcement.
 
 
 33
 The Weyerhauser court was influenced in deciding that exhaustion was not required by its perception that the development of a factual record in ruling on probable cause was not necessary, since such a determination could be made by looking at the warrant application alone. 592 F.2d at 376. If a factual record were superfluous in this case, we might also consider it a factor to be weighed against requiring exhaustion though it would hardly be determinative because of the many important considerations, already set out, that favor the requirement. It is apparent here, as we believe would be true in most cases, that there are many disputed issues of fact relevant to the constitutional claims. For example, the parties contest whether each inspection was wall-to-wall; whether the magistrate authorized general inspections in the second and third warrants; whether, if general inspections were authorized, OSHA's use of specific complaints to trigger general inspections constitutes a valid administrative enforcement scheme;[42] and whether the magistrate was properly apprised of the agency's inspection scheme. A factual record and resolution of all of these issues would be quite useful, if not absolutely necessary, were this Court eventually called upon to decide the various constitutional issues urged by Babcock.
 
 
 34
 Babcock contends that exhaustion of administrative remedies should not be required because the constitutional claims in this litigation, even if they may be considered by the Review Commission, bear no relation to the administrative expertise of the tribunal in resolving issues pertaining to safety violations. The Review Commission, Babcock argues, has no expertise with regard to the interpretation of the constitutional and statutory concept of "reasonableness" in OSHA inspections.[43]
 
 
 35
 Specialized tribunals obviously do not come into being with their full potential developed. And since it is only recently that the Review Commission has determined that issues similar to those posed by Babcock may be considered without passing on the constitutionality of its enabling legislation, it should not be surprising that the development of expertise on these issues is in the formative stage. If exhaustion of administrative remedies were inapplicable when an agency's expertise has not been established, as Babcock contends, the doctrine might well be frustrated whenever a new agency or independent tribunal were created. Although the Review Commission may not, in its early stages, have developed expertise in deciding, for example, what constitutes administrative probable cause and a reasonable inspection under the Act, the thought that expertise on those issues will be developed by the Review Commission reinforces our conclusion that exhaustion of administrative remedies is required in this case.
 
 
 36
 We are not persuaded by any of the reasons advanced by Babcock to excuse it from the general rule of exhaustion of administrative remedies. Indeed, an examination of the congressional purpose in establishing OSHA convinces us that application of the rule is essential if the Act is to accomplish its goal.
 
 
 37
 Congress found that "personal injuries and illnesses arising out of work situations imposed a substantial burden upon, and were a hindrance to, interstate commerce . . . ."[44] It therefore declared its purpose and policy to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions."[45] To balance the need for "swift issuance of abatement orders to protect employees endangered by the conditions of their work"[46] with the requirements of due process to employer and employee alike, the Review Commission was established to carry out the Act's adjudicatory functions.
 
 
 38
 Were an employer given the power to invoke the district court's jurisdiction on the eve of a scheduled hearing before the Review Commission whenever an inspection warrant is challenged on constitutional grounds, we might well sunder the statutory balance between swift abatement of dangerous conditions and due process protections. As the Court of Appeals for the First Circuit stated: "The practice of considering motions to suppress in proceedings separate from the proceedings at which the evidence would be used would afford much opportunity for abuse for dilatory purposes, to the detriment and possible disruption of effective law enforcement."[47]
 
 
 39
 The district court's order denying Babcock's motion to quash the warrants and dismissing the company's complaint for declaratory and injunctive relief will be affirmed.
 
 
 
 [1]
 The Supreme Court in Barlow's held that § 8(a) of the Act, 29 U.S.C. § 657(a), was "unconstitutional insofar as it purports to authorize inspections without a warrant of its equivalent," as required by the Fourth Amendment of the Constitution. 436 U.S. at 325, 98 S.Ct. at 1827
 
 
 [2]
 The Supreme Court distinguished the element of probable cause for a search warrant required in criminal investigations from that required in administrative enforcement, but was not called on to define the exact limits of the latter:
 Whether the Secretary proceeds to secure a warrant or other process, with or without prior notice, his entitlement to inspect will not depend on his demonstrating probable cause to believe that conditions in violation of OSHA exist on the premises. Probable cause in the criminal law sense is not required. For purposes of an administrative search such as this, probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular (establishment)." Camara v. Municipal Court, 387 U.S., (523,) at 538 (, 87 S.Ct. 1727, 18 L.Ed.2d 930). A warrant showing that a specific business has been chosen for an OSHA search on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources such as, for example, dispersion of employees in various types of industries across a given area, and the desired frequency of searches in any of the lesser divisions of the area, would protect an employer's Fourth Amendment rights.
 Marshall v. Barlow's, Inc., 436 U.S. at 320-21, 98 S.Ct. at 1824-1825 (footnotes omitted).
 
 
 [3]
 See Rothstein, OSHA Inspections After Marshall v. Barlow's, Inc., 1979 Duke L.J. 63, 86-98 & nn.1 44-210 (discussing issues and citing cases)
 
 
 [4]
 610 F.2d 1141 (3d Cir. 1979)
 
 
 [5]
 Compare In re Worksite Inspection of Quality Products, Inc., 592 F.2d 611 (1st Cir. 1979) (exhaustion of administrative remedies required) And In re Inspection of Central Mine Equipment Co., No. 79-1251 (8th Cir. Nov. 5, 1979) (same) With Weyerhauser Co. v. Marshall, 592 F.2d 373 (7th Cir. 1979) (exhaustion not required)
 
 
 [6]
 OSHA regulations provide that any employee who believes that a violation exists at his place of employment may request an inspection by giving written, signed notice of his allegations, "set forth with reasonable particularity," to an OSHA officer. 29 C.F.R. § 1903.11(a) (1978). If the Area Director determines that the complaint meets the above requirements, "and that there are reasonable grounds to believe that the alleged violation exists, he shall cause an inspection to be made as soon as practicable." Id. § 1903.11(b)
 
 
 [7]
 See 29 U.S.C. § 659(c) (1976). The first step in the administrative review process is a hearing before an Administrative Law Judge (ALJ) of the Review Commission. After the hearing the ALJ issues a report based on findings of fact, See id., and the report becomes the final order of the Review Commission unless a Commission member directs, within 30 days of the filing of the ALJ's report, a review by the full Commission. 29 C.F.R. § 2200.90 (1979). Upon issuance of a final order, whether in the form of an unreviewed ALJ's decision or an order of the full Review Commission, any person adversely affected or aggrieved by the order may obtain review as of right in a Court of Appeals by filing a petition within 60 days of the filing of the final order. 29 U.S.C. § 660(a) (1976)
 
 
 [8]
 Id. § 657(a)
 
 
 [9]
 In United States v. Ryan, 402 U.S. 530, 532-33, 91 S.Ct. 1580, 1582, 29 L.Ed.2d 85 (citations omitted), the Supreme Court stated:
 (W)e have consistently held that the necessity for expedition in the administration of the criminal law justifies putting one who seeks to resist the production of desired information to a choice between compliance with a trial court's order to produce prior to any review of that order, and resistance to that order with the concomitant possibility of an adjudication of contempt if his claims are rejected on appeal. . . . only in the limited class of cases where denial of immediate review would render imposssible any review whatsoever of an individual's claims have we allowed exceptions to this principle.
 
 
 [10]
 Although it has been stated that an order otherwise not appealable may be considered by an appellate court in conjunction with an order that is appealable, See United States v. Spectro Foods Corp., 544 F.2d 1175, 1179 (3d Cir. 1977); Emery Air Freight Corp. v. Local Union 295, 449 F.2d 586 (2d Cir. 1971), the Supreme Court's opinion in Abney v. United States, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), casts doubt on that general principle. In Abney the Court held that a denial of a double jeopardy claim came within the collateral order exception to the final judgment rule, but that other orders not independently appealable could not be considered by being appended to an appealable order. Id. at 663, 97 S.Ct. 2034; Accord, NLRB v. Interstate Dress Carriers, Inc., 610 F.2d 99 at 103 (3d Cir. 1979); United States v. Cerilli, 558 F.2d 697, 699-700 (3d Cir. 1977) (per curiam). Consequently, the district court's denial of Babcock's motion to quash the warrant is not appealable simply because the denial of the declaratory judgment and injunction is an appealable order
 
 
 [11]
 See United States v. Calandra, 414 U.S. 338, 354, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (search made without probable cause fully accomplishes Fourth Amendment injury; subsequent proceedings based on illegal search work no new constitutional injury); In re Establishment Inspection of Whittaker Corp., 610 F.2d at 1144 (3d Cir. 1979)
 
 
 [12]
 Counsel has directed us to no case in which a warrant was quashed after execution, and our independent research has turned up none
 
 
 [13]
 In Whittaker, the district court held the company in contempt and ordered it to purge the contempt by complying with the contested warrant. Because the district court's Order and not simply actions occurring in the course of the underlying dispute had collateral legal consequences, we held that by the time of the appeal, portions of the order were not moot in the constitutional sense
 The responsibilities of federal courts are different before an injury has occurred, as distinguished from the standards that prevail after the injury is accomplished and all that is left is to adjudicate what, if anything, will come of such injury. Inspection warrants are required precisely to prevent an illegal search from occurring. That they may be obtained only from the federal judiciary indicates the importance of our responsibility to ensure that the warrants be proper. Once the inspection has occurred, however, the same sense of exigency does not pertain. The company will not have to pay any fines, nor, other than in exceptional circumstances, will the violations have to be corrected until all good faith challenges to the citations have been considered by the Review Commission. 29 U.S.C. § 659(b) (1976). If the company pursues judicial review, a stay of that tribunal's final order may be granted either by the Commission itself, 29 C.F.R. § 2200.92 (1978), or by the Court of Appeals, 29 U.S.C. § 660(a).
 
 
 [14]
 6 OSHC (BNA) 1663, 1665 (D.R.I. May 30, 1978); Aff'd 592 F.2d 611 (1st Cir. 1979)
 
 
 [15]
 Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 50-51, 58 S.Ct. 459, 463, 82 L.Ed. 638 (1938)
 
 
 [16]
 In re Restland Memorial Park, 540 F.2d 626, 628 (3 Cir. 1976) (citing Keystone Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n., 539 F.2d 960 (3d Cir. 1976)) ("The doctrine of exhaustion of administrative remedies applies under (the Occupational Safety and Health Act).")
 
 
 [17]
 The warrant could be issued by a district judge or a magistrate. The power of magistrates to issue inspection warrants was not challenged by Babcock and has been upheld as deriving from 28 U.S.C. § 636(a)(1), (b)(2) (1976) (assigning to magistrates all powers formerly conferred on United States commissioners; magistrates may be assigned "such additional duties as are not inconsistent with the Constitution and laws of the United States"). See In re Worksite Inspection of Quality Products, Inc., 592 F.2d at 613 & n.2; In re Establishment Inspection of Gilbert & Bennett Manufacturing Co., 589 F.2d 1335, 1341 & n.6 (7th Cir.), Cert. denied, 48 U.S.L.W. 3222 (1979)
 
 
 [18]
 Magistrates are appointed and may be removed by the judges of the district court. 28 U.S.C. § 631(a), (h) (1976). Magistrates discharge their duties pursuant to rules promulgated by the district court. Id. § 636(b)(4). Furthermore, district judges may assign magistrates to hear and determine certain pretrial matters, subject to de novo review as of right by either party. Id. § 636(b)(1)(A). See generally Note, Article III Constraints and the Expanding Civil Jurisdiction of Federal Magistrates: A Dissenting View, 88 Yale L.J. 1023, 1025-30 (1979)
 
 
 [19]
 See Weyerhauser Co. v. Marshall, 592 F.2d 373, 377 (7th Cir. 1979) (that magistrates "are appointed, assigned duties, and generally supervised by the district courts" weighs heavily against requiring exhaustion of administrative remedies); Morris v. Department of Labor, 439 F.Supp. 1014, 1018 (S.D.Ill.1977) ("since the attack here is on the warrant issued by this Court through its magistrate, I find that this Court must retain the power to determine the legality of its process just as it must retain jurisdiction to enforce its process by contempt if necessary")
 
 
 [20]
 W. E. B. DuBois Clubs v. Clark, 389 U.S. 309, 312, 88 S.Ct. 450, 19 L.Ed.2d 546 (1967)
 
 
 [21]
 The exhaustion doctrine also has constitutional dimensions. See Part V Infra; American Fed'n of Gov't Employees v. Resor, 442 F.2d 993, 994 (3d Cir. 1971) ("For the courts to act prematurely, prior to the final decision of the appropriate administrative agency, would raise a serious question regarding the doctrine of separation of powers, and in any event would violate a congressional decision that the present controversy be initially considered by the (agency).")
 
 
 [22]
 Constitutional injuries, however, may be the subject of restitution in another forum. See Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)
 
 
 [23]
 Cf. Metal Bellow Corp. v. Pylypetz, 6 OSHC (BNA) 1979 (1st Cir. Sept. 1, 1978) (dismissing as moot appeal from district court denial of motion to quash warrant that OSHA had surrendered without executing)
 
 
 [24]
 See Barnes v. Chatterton, 515 F.2d 916, 921 (3d Cir. 1975) (requirement of exhaustion of administrative remedies "affects only the timing, not the effectiveness of judicial review")
 
 
 [25]
 29 U.S.C. § 660(a) (1976)
 
 
 [26]
 See A Quaker Action Group v. Morton, 148 U.S.App.D.C. 346, 460 F.2d 854, 861 (D.C.Cir. 1971) (no right to de novo factual record in federal court when administrative procedure "is fair and adequate for presentation of material facts"); Cf. Blocksom & Co. v. Marshall, 582 F.2d 1122, 1124 (7th Cir. 1978) (review of constitutional defenses to enforcement of the Act requires factfinding in the Review Commission); Marshall v. Northwest Orient Airlines, Inc., 574 F.2d 119, 122 (2d Cir. 1978) (exhaustion of administrative remedies required despite existence of constitutional claims); Marshall v. Able Contractors, Inc., 573 F.2d 1055, 1057 (9th Cir.) (per curiam), Cert. denied, 439 U.S. 826, 99 S.Ct. 98, 58 L.Ed.2d 119 (1978) (Fourth Amendment claim not raised before Review Commission waived for purposes of review by Court of Appeals
 
 
 [27]
 See Alma Motor Co. v. Timken-Detroit Axle Co. 329 U.S. 129, 136-37, 67 S.Ct. 231, 91 L.Ed. 128 (1946); Ashwander v. Tennessee Valley Auth., 297 U.S. 288, 346-47, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring)
 
 
 [28]
 See American Fed'n of Gov't Employees v. Resor, 442 F.2d 993, 994 (3d Cir. 1971) ("(W)hen Congress has provided an administrative procedure which is capable of resolving a controversy such procedure must be utilized.") The constitutional underpinnings of the exhaustion doctrine differ somewhat when deferral is to an administrative tribunal as distinct from deferral to the agency itself. In the latter case, the doctrine involves judicial recognition of the autonomy of the executive branch "so that the agency may function efficiently and so that it may have an opportunity to correct its own errors." Weinberger v. Salfi, 422 U.S. 749, 765, 95 S.Ct. 2457, 2467, 45 L.Ed.2d 522 (1975) (dictum); See In re Restland Memorial Park, 540 F.2d at 628; United States ex rel. Marrero v. Warden, Lewisburg Penitentiary, 483 F.2d 656, 659 (3d Cir. 1973), Rev'd on other grounds, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974)
 
 
 [29]
 Barnes v. Chatterton, 515 F.2d 916, 920 (3d Cir. 1975); See United States ex rel. Sanders v. Arnold, 535 F.2d 848, 852 (3d Cir. 1976) (Adams, J., dissenting) ("the exhaustion doctrine is in no sense an absolute"; rather, its essence is flexibility and "the courts have discretionary power to choose not to require exhaustion")
 
 
 [30]
 United States ex rel. Marrero v. Warden, Lewisburg Penitentiary, 483 F.2d 656 (3d Cir. 1973), Rev'd on other grounds, 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974) (both parties agreed that administrative procedure would be futile)
 
 
 [31]
 Barnes v. Chatterton, 515 F.2d at 920; First Jersey Securities, Inc. v. Bergen, 605 F.2d 690, 696 (3d Cir. 1979)
 
 
 [32]
 American Fed'n of Gov't Employees, Local 1004 v. Resor, 442 F.2d 993, 994-95 (3d Cir. 1971), Quoted in Barnes v. Chatterton, 515 F.2d 916, 920 (3d Cir. 1975); Accord, Renegotiation Bd. v. Bannercraft Clothing Co., Inc., 415 U.S. 1, 24, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974)
 
 
 [33]
 Finnerty v. Cowen, 508 F.2d 979 (2d Cir. 1974)
 
 
 [34]
 Continental Can Co., U.S.A. v. Marshall, 603 F.2d 590, 596 (7th Cir. 1979). The Court in Continental Can carefully distinguished the case before it, in which the administrative proceeding was attacked as a violation of due process, so that its holding did not conflict with the established principle that the exhaustion requirement applies despite the fact that constitutional issues are raised in the contentions of the parties in the proceeding. See id. at 597 n.12
 
 
 [35]
 592 F.2d 373 (7th Cir. 1979)
 
 
 [36]
 Id. at 376
 
 
 [37]
 Chromalloy American Corp., 7 OSHC (BNA) 1547 (Rev. Comm'n July 17, 1979) (relying on In re Worksite Inspection of Quality Products, Inc., 592 F.2d 611, 615 (1st Cir. 1979) to change former policy enunciated in Electrocast Steel Foundry Inc., 6 OSHC (BNA) 1562 (Rev. Comm'n 1978)). The Review Commission stated: "(W)hen faced with a challenge to the validity of an inspection warrant in a pre-Barlow's case, the Commission was placed in a particularly difficult position. In order to pass upon a warrant's validity, the Commission, at least implicitly, would first have to pass upon the constitutionality of 29 U.S.C. § 657(a) in order to arrive at a need for the warrant and hence, a reason to address the issue." Id. at 1548. Since Chromalloy, a motion to suppress evidence on the ground of inadequate probable cause for an inspection warrant issued by a magistrate has been considered by an ALJ of the Review Commission. Secretary of Labor v. Molded Accoustical Products, Inc., OSHRC No. 79-1274 (June 12, 1979)
 
 
 [38]
 Chromalloy American Corp., 7 OSHC (BNA) at 1548
 
 
 [39]
 See note 43 Infra (statutory component of reasonableness requirement for OSHA inspections)
 
 
 [40]
 As stated in 3 K. Davis, Administrative Law Treatise § 20.04, at 74 (1958):
 A fundamental distinction must be recognized between constitutional applicability of legislation to particular facts and constitutionality of legislation. When a tribunal passes upon constitutional applicability, it is carrying out the legislative intent, either express or implied or presumed. When a tribunal passes upon constitutionality of the legislation the question is whether it shall take action which runs counter to the legislative intent. We commit to administrative agencies the power to determine constitutional applicability, but we do not commit the administrative agencies the power to determine constitutionality of legislation.
 
 
 [41]
 Compare Todd Shipyards Corp. v. Secretary of Labor, 586 F.2d 683, 689 (9th Cir. 1978) (dictum) (suggesting that exclusionary rule should not be applied to OSHA proceedings) With Savina Home Industries, Inc. v. Secretary of Labor, 594 F.2d 1358, 1363 (10th Cir. 1979) (exclusionary rule applies to OSHA proceedings). See generally 1 W. LaFave, Search and Seizure § 1.5(3), at 96-102 (1978) (survey of cases). The Review Commission has followed the decision of both Todd Shipyards and Savina that the exclusionary rule does not apply retroactively to pre-Barlow's inspections. Meadows Industries, Inc., 48 U.S.L.W. 2233 (Rev. Comm'n Sept. 7, 1979)
 
 
 [42]
 Although this question may be primarily one of law, it is one that an appellate court would be reluctant to decide without a well developed factual record detailing the basis for OSHA's inspection scheme
 
 
 [43]
 There are constitutional and statutory components of reasonableness that an OSHA inspection must satisfy. The Fourth Amendment protects the right to be secure "against unreasonable searches and seizures." As interpreted by the Supreme Court in Barlow's, 29 U.S.C. § 657(a) embodies this protection. The section requires, in addition, that a work inspection be at "reasonable times, and within reasonable limits and in a reasonable manner." 29 U.S.C. § 657(a) (2) (1976)
 
 
 [44]
 29 U.S.C. § 651(a) (1976)
 
 
 [45]
 Id. § 651(b); See Keystone Roofing Co., Inc. v. Occupational Safety & Health Rev. Comm'n, 539 F.2d 960, 962 (3d Cir. 1976)
 
 
 [46]
 In re Restland Memorial Park, 540 F.2d 626, 628 n.14 (3d Cir. 1976)
 
 
 [47]
 In re Worksite Inspection of Quality Products, Inc., 592 F.2d 611, 616 (1st Cir. 1979)