819 F.2d 377
 Prod.Liab.Rep.(CCH)P 11,403
DELESKI, Diane, Administratrix of the Estate of Kenny, John,
Deceased, and Deleski, Diane, in her own right, Appellant,
v.
RAYMARK INDUSTRIES, INC., Owens-Corning Fiberglas
Corporation; Owens-Illinois Glass Company; Eagle-Picher
Industries, Inc.; H.K. Porter Company, Inc.; Southern
Textile Corporation; Keene Corporation; Pittsburgh Corning
Corporation; Pacor, Inc.; Celotex Corporation; GAF
Corporation and Fibreboard Corporation
v.
NICOLET, INC.; Forty-Eight Insulations, Inc.; Armstrong
Contracting & Supply Co.; Garlock, Inc. and
United States of America.
 No. 86-1461.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 24, 1987.
Decided May 15, 1987.
 
 Neil Peterson (argued), Lee B. Balefsky, Jonathan W. Miller, Greitzer and Locks, Philadelphia, Pa., for appellant.
 Joseph W. McGuire (argued), John Patrick Kelley, Anne T. Hopkins, Krusen, Evans & Byrne, Philadelphia, Pa., for appellees, Porter Co., Inc., et al.
 Stuart J. Agins (argued), Edward Greer, Perry H. Sobel, Mersirov, Gelman, Jaffe Cramer & Jamieson, Philadelphia, Pa., for appellee, GAF Corp.
 Before WEIS, HUNTER and BECKER, Circuit Judges.
 
 OPINION OF THE COURT
 JAMES HUNTER, III Circuit Judge:
 
 1
 In this diversity case, we are asked to determine whether or not the District Court abused its discretion in denying appellant's motion to transfer her case from the Eastern District of Pennsylvania to the District of New Jersey pursuant to 28 U.S.C. Sec. 1404(a) (1982) ("Sec. 1404(a)").[1] We find that Judge Scirica did not abuse his discretion in denying this motion.
 
 
 2
 John Kenny ("Kenny") died on August 14, 1973. While the death certificate listed the cause of death as simply "lung cancer," the autopsy report specifically noted the presence of "[p]oorly differentiated bronchogenic carcinoma ... [a]ssociated with asbestosis." Appendix at 80. Although Kenny's widow, Diane Deleski ("Deleski"), authorized the autopsy, she says that she did not see a copy of the report, and hence did not learn of her late husband's asbestos-related condition, until September of 1981. On July 12, 1983, less than two years after she discovered the asbestos link, Deleski brought suit on behalf of Kenny's estate under the Wrongful Death Act of New Jersey, N.J.Stat.Ann. Secs. 2A:31-1--2A:31-6, and 2A:15-3 (West 1952), against various asbestos manufacturers in the Eastern District of Pennsylvania. She also claimed loss of consortium and damage to her own health as a result of her handling of her husband's asbestos-tainted clothing and her inhalation of the asbestos dust he brought into the house. On January 17, 1986, roughly three weeks prior to the February 10, 1986 trial date, defendants filed a motion for summary judgment arguing that appellant's action was barred by Pennsylvania's statute of limitations in wrongful death and survival actions.[2] Appellant did not respond to this motion, but on February 3, 1986, filed a Sec. 1404(a) motion for transfer to the District of New Jersey, and a motion to defer answer to defendants' summary judgment motion. Judge Scirica denied appellant's motion to transfer and granted defendants' motion for summary judgment.
 
 
 3
 Deleski's claim, which was brought ten years after her husband's death, is clearly barred by the Pennsylvania statute of limitations. Prior to June 1978, the time limit for wrongful death actions was controlled by Pa.Stat.Ann. tit. 12, Sec. 1603 (Purdon 1953) (repealed 1978), which required such actions to be brought "within one year after the death, and not thereafter." In 1978, the legislature passed a new statute that required actions "to recover damages for ... the death of an individual caused by the wrongful act or neglect ... of another," 42 Pa.Con.Stat.Ann. Sec. 5524(2) (Purdon 1981), to be brought within two years. The longer limitations period is not available to Deleski, as the legislature expressly provided that "[n]o cause of action fully barred prior to the effective date of this act shall be revived by reason of the enactment of this act." Judiciary Act of July 9, 1976, P.L. 586, No. 142, Sec. 25(b) (1978) (reprinted following 42 Pa. Cons.Stat.Ann. Sec. 5524 (Purdon 1981)). Because Deleski's claim was clearly barred by the pre-1978 statute, which unambiguously requires the commencement of a wrongful death action within one year of the date of death, it may not be revived by the 1978 statute.
 
 
 4
 At first blush, it might appear that, because she did not discover the possible asbestos link to Kenny's death until 1981, Deleski is entitled to the application of the equitable "discovery rule," which tolls the running of the statute of limitations period when the injury or its cause is not immediately evident to the victim. See Ciccarelli v. Carey Canadian Mines, Ltd., 757 F.2d 548 (3d Cir.1985). However, the Pennsylvania Supreme Court has held that the discovery rule does not toll the pre-1978 statute of limitations in wrongful death actions. See Anthony v. Koppers Co., 496 Pa. 119, 436 A.2d 181 (1981) (plurality).[3] Applying the rules of statutory construction, the court in Anthony v. Koppers concluded that while the loose wording of the 1978 statute can accommodate the application of the discovery rule, the plain language of the pre-1978 statute, requiring wrongful death actions to be brought within one year of the date of death, cannot.
 
 
 5
 In addition to her wrongful death claims, Deleski also brought survival claims on behalf of her late husband. The limitation on these actions is controlled by Pa.Stat.Ann. tit. 12, Sec. 34 (Purdon 1953) (repealed 1978), which provided that
 
 
 6
 Every suit hereafter brought to recover damages for injury wrongfully done to the person, in case [sic] where the injury does not result in death, must be brought within two years from the time when the injury was done and not afterwards; in cases where the injury does result in death the limitation of action shall remain as now established by law.
 
 
 7
 In Anthony v. Koppers, the Pennsylvania Supreme Court found that the two-year limitations period for survival actions cannot be tolled by the discovery rule. The court reasoned that the survival statute, unlike the wrongful death act, does not create a new cause of action in the decedent's representatives, but instead preserves a cause of action possessed by the decedent during his lifetime. Therefore, the court concluded that it would be logically impossible to toll the accrual of the cause of action until some time after the decedent's death (i.e., upon the survivor's discovery of the decedent's injury). By arguing that the survival action did not accrue until eight years after Kenny's death, Deleski "concede[s] that no valid cause of action existed at the time of death which could be preserved under the survival statutes." Anthony v. Koppers, 496 Pa. at 125, 436 A.2d at 185. Thus, Deleski's survival act claims are time-barred under Pennsylvania law.
 
 
 8
 Deleski also claimed injury to her own health as a result of her husband's exposure to asbestos.[4] Her aim was two-fold. She alleged (a) that she is at "risk to contract diseases and injuries to her [own] body system," and (b) that she suffers from a variety of emotional and mental injuries arising from "the knowledge that she is likely to contract cancer because of her exposure to asbestos particles in and around the home." Under either New Jersey or Pennsylvania law, plaintiff fails to state a claim upon which relief can be granted. Under New Jersey law, neither enhanced risk of disease nor the fear and emotional distress attendant upon that risk is compensable without some present physical manifestation of illness or injury. See Herber v. Johns-Manville Corp., 785 F.2d 79, 82 (3d Cir.1986) (no recovery for an enhanced risk of future harm standing alone); id. at 84-85 (recovery for emotional harm available only where plaintiff has sustained physical impact, injury or illness). Under Pennsylvania law, Deleski cannot state a legally cognizable "claim for negligent infliction of emotional distress based on the risk to her own health ... unless and until she manifest[s] physical injury caused by exposure to asbestos dust." Cathcart v. Keene Indus. Insulation, 324 Pa.Super. 123, 151, 471 A.2d 493, 507 (1984); accord, Berardi v. Johns-Manville Corp., 334 Pa.Super. 36, 44-45, 482 A.2d 1067, 1072 (1984). Similarly, Pennsylvania law does not provide a cause of action for intentional infliction of emotional distress for persons who, like Deleski, were allegedly "indirectly exposed to asbestos through contact with persons who had worked with finished asbestos products." Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 86 (3d Cir.1987). Finally, Deleski's "enhanced risk" claim must fail under the law of Pennsylvania, which does not provide recovery for "the possibility of future harm caused by a tortious act." Martin v. Johns-Manville Corp., 508 Pa. 154, 165 n. 5, 494 A.2d 1088, 1094 n. 5 (1985) (citing Lorch v. Eglin, 369 Pa. 314, 320, 85 A.2d 841, 844 (1952)) (emphasis added).[5]
 
 
 9
 For these reasons, we find that the district court's granting of the defendants' motion for summary judgment was proper. The clear barring of appellant's claim by the applicable Pennsylvania statute of limitations also leads us to conclude that Judge Scirica was well within his discretion in refusing appellant's Sec. 1404(a) transfer motion. Deleski's argument in support of her transfer motion is that transfer to the District of New Jersey would be in the "interest of justice" because her case, while barred by the statute of limitations in Pennsylvania, would not be barred by the statute of limitations in New Jersey. Deleski claims that she was not aware that her case would be time-barred in Pennsylvania until 1985, when this court decided Ross v. Johns-Manville Corp., 766 F.2d 823 (3d Cir.1985). Assuming that this intervening judicial decision is relevant to appellant's case and would provide an appropriate basis for a Sec. 1404(a) transfer, we nevertheless find that Judge Scirica's denial of transfer was appropriate, because appellant's claim was clearly time-barred prior to the 1985 Ross decision. Prior to the appellant's filing of her complaint in July of 1983, the following information regarding the controlling statute of limitations was available to Deleski's attorney: (1) a federal district court sitting in diversity in Pennsylvania will apply the Pennsylvania statute of limitations; (2) the 1978 wrongful death and survival action limitations statute is not applicable to claims already barred under the pre-1978 statute; and (3) the equitable discovery rule is applicable neither to pre-1978 wrongful death actions nor to survival actions. Despite this information, plaintiff chose to file her complaint in the Eastern District of Pennsylvania. It is not in the "interest of justice" to transfer this case to the District of New Jersey upon appellant's tardy discovery that her complaint is time-barred.
 
 
 10
 We need not reach the two issues to which appellant's brief is chiefly devoted. First, because we find that transfer would not be in the interest of justice, we need not determine which statute of limitations period--that of the transferor or the transferee court--should apply in a Sec. 1404(a) transfer brought by the plaintiff. Because the case before us is easily resolved on the basis of existing law, we believe that the doctrine of judicial restraint cautions against the resolution of this complex and important procedural issue at this time. Cf. Republic Indus. v. Central Pa. Teamsters Pension Fund, 693 F.2d 290, 293 (3d Cir.1982) ("constitutional issues ... should not be decided if a controversy may be resolved on some other ground") (quoting Babcock & Wilcox Co. v. Marshall, 610 F.2d 1128, 1137 (3d Cir.1979) (citing Ashwander v. TVA, 297 U.S. 288, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring))). Second, we will not reevaluate our opinion in Ross v. Johns-Manville Corp., 766 F.2d 823 (3d Cir.1985), because we lack the power to do so under the Internal Operating Procedures of the Third Circuit. See United Food & Commercial Workers Union, Local 23 v. NLRB, 788 F.2d 178 (3d Cir.1986) (under Internal Operating Procedure 8C, only the entire court, sitting in banc, has the power to overrule a prior panel opinion), cert. granted, --- U.S. ----, 107 S.Ct. 871, 93 L.Ed.2d 826 (1987).
 
 
 11
 The order of the district court will be affirmed.
 
 
 12
 EDWARD R. BECKER, Circuit Judge, concurring.
 
 
 13
 I join the majority opinion so far as it goes. Plaintiff contends in part that, when she filed her complaint in the Eastern District of Pennsylvania, she had no way of anticipating this Court's holding in Ross v. Johns-Manville Corp., 766 F.2d 823 (3d Cir.1985), and that this surprise makes it in the interest of justice to transfer her case to New Jersey. The majority has rejected this contention by showing that plaintiff has no right to claim surprise. I agree with its result and reasoning on that issue.
 
 
 14
 In my view, however the majority does not deal adequately with Deleski's contentions (1) that transfer was proper here because the transferee forum would have applied New Jersey law to the dispute; (2) that under that law the suit would not have been time-barred, and (3) that transfer was therefore in the interest of justice. I think we must answer that argument as plaintiff has made it.
 
 
 15
 In Van Dusen v. Barrack, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), the Supreme Court held that if a defendant's motion to transfer is granted, the substantive law governing the dispute must remain the law which would have been applied by the transferor forum. The Court's holding was expressly limited to defendants' transfer motions, and explicitly reserved the issue whether transferor or transferee law should apply on grant of plaintiff's Sec. 1404 motion. Id.
 
 
 16
 Plaintiff has put her case to us as an opportunity to answer the question reserved by the Supreme Court in Van Dusen.[1] Deleski concedes that if her suit is litigated in Pennsylvania it is governed and barred by the Pennsylvania statute of limitations. She argues, however, that on a plaintiff's motion it is in the "interest of justice" to transfer a suit to a district where it might have been brought if that transfer will permit a merits disposition. Deleski asserts that if this case is transferred to the District of New Jersey a merits disposition will be permitted because the law governing the dispute after the transfer should be the law of the transferee, as opposed to the transferor, forum, and because that law is more helpful to her on the statute of limitations question.
 
 
 17
 Like the majority, I do not reach the issue as reserved by the Supreme Court in Van Dusen and as stated for us here by Deleski. Because I think we must, I would go further than the majority. I would hold that an opportunity for either party to circumvent unfavorable law in the transferor state does not make transfer "in the interest of justice" for purposes of Sec. 1404. I reject plaintiff's argument, therefore, because I believe that, as the term is used in Sec. 1404(a), the "interest of justice" cannot be understood to include any impact on the law governing the case. The majority recognizes that "the core question" on this appeal is "whether or not transfer of this case to the District of New Jersey would be in the 'interest of justice.' " Majority op. at 381 n. 5. It concludes, however, that that question can be answered simply by observing that this lawsuit is time-barred under Pennsylvania law, and that Deleski should have known as much when she filed the complaint. As noted above, however, appellant is well aware that her complaint is barred under this court's opinion in Ross: her argument is not based on surprise but on the desireability of avoiding time bars if that can be done. To say that Deleski should have known about the time bar when her complaint was filed therefore does not answer the question whether it is in the interest of justice to avoid the bar if possible.
 
 
 18
 While Van Dusen decided only what law should be applied on defendant's Sec. 1404 motion, much of the Court's reasoning was not restricted to defendants' requests for transfer. Speaking generally about the choice of law after a change of venue, the Court instructed:The legislative history of Sec. 1404(a) certainly does not justify the rather startling conclusion that one might "get a change of law as a bonus for a change of venue." [quoting Justice Jackson, dissenting, in Wells v. Simonds Abrasive Co., 345 U.S. 514, 522 [73 S.Ct. 856, 860, 97 L.Ed. 1211] (1953) ]. Indeed, an interpretation accepting such a rule would go far to frustrate the remedial purposes of Sec. 1404(a). If a change of law were in the offing, the parties might well regard the section primarily as a forum-shopping instrument.
 
 
 19
 376 U.S. at 635-36, 84 S.Ct. at 818-19 (footnotes omitted). On the basis of this argument and another, which pertained only to transfer motions made by defendants, the Court concluded:
 
 
 20
 We believe, therefore, that both the history and purposes of Sec. 1404(a) indicate that it should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms.
 
 
 21
 Id. at 636, 84 S.Ct. at 819. This conclusion is not limited to defendants' transfer motions. For instance, the Court speaks generally about the danger that "parties" will regard Sec. 1404(a) "as a forum-shopping instrument." Similarly, the Court's reliance on the provision's legislative history--and the conclusion the Court draws from that history--are applicable to transfer motions brought by any party. Yet if forum-shopping is forbidden as to all parties, and if Sec. 1404 is a judicial housekeeping measure with respect to all parties, then a change in the law governing the case must always be deemed irrelevant for purposes of a Sec. 1404(a) motion to transfer. This should be true regardless of which party makes the motion.
 
 
 22
 While not dispositive, I note as well that the statute's language also suggests that it is intended to authorize courts to eliminate only those obstacles to merits dispositions which arise from the inconvenient locale. The statute provides that transfer may be ordered "for the convenience of the parties and witnesses, in the interest of justice." The fact that a comma follows "witnesses," rather than a conjunction, suggests that the "interest of justice" with which the statute is concerned is that "interest" related to "the convenience of the parties and witnesses." If the statute had allowed courts to transfer "for the convenience of the parties and witnesses or in the interest of justice," plaintiff might have a stronger case.
 
 
 23
 An additional reason for believing that the "interest of justice" does not embrace the effect of a transfer on governing law is that there is no practical or accurate way to assess the impact on "justice" of such a change. To make such an assessment would require a federal court to decide which of two states' laws is more "just." Absent a clear instruction in the statute or its legislative history, I am unwilling to believe that Congress posed that question to us when it passed Sec. 1404.
 
 
 24
 Here, for example, the plaintiff has argued that it is in the interest of justice to enable her to avoid a statute of limitations. Some consider time bars annoying technicalities, and it is upon this approach that plaintiff has built her argument before this Court. But time bars are as much laws--the results of important policy choices by states--as any other kind of state statute, and a federal court has no reason or right to prefer New Jersey's decision on time bars to Pennsylvania's.[2] Moreover, every change of law which benefits one party must necessarily harm his adversary: why is it in the interest of justice to enable a plaintiff to get what for him is better law, rather than a defendant?
 
 
 25
 Moreover, what about other changes in law aside from the particular change in the statute of limitations which is motivating the plaintiff? If we consider the impact on justice of changes in plaintiff's favor, must we not also consider the impact on justice of other changes, whether they help or hurt plaintiff or defendant? And if we do assess the impact on justice of these changes, by what standard should we measure it?
 
 
 26
 As I am sure is obvious, I think the only way to deal with this question is to hold that changes in the law governing the dispute will not be understood to have an impact on "justice" for purposes of a Sec. 1404(a) motion. For purposes of Sec. 1404(a) each state's law must be deemed equally "just."
 
 
 27
 Finally, plaintiff seeks to avoid the inquiry into which state's law is more "just" by pointing out that, since she could have filed her complaint in New Jersey in the first place, adoption of the rule she seeks will only give her what she would otherwise have been entitled to. Plaintiff is correct that, given Erie and Klaxon, her freedom to chose a forum is, in part, a freedom to decide which state's law will govern her case. She is wrong, however, in arguing that because she has that choice at the outset of the case she may still make it--for a second time--after the complaint is filed.
 
 
 28
 Plaintiff's error is that she ignores the fact that transfer is authorized here only under the terms of Sec. 1404(a). That section permits a court to order transfer if it is in the "interest of justice." Here plaintiff has contended that the change is in the interest of justice because it will bring her under a more favorable statute of limitations. We could accept that argument only if we decided that it was "just" for plaintiff to be so governed. Saying that she could have chosen to be so governed if she had filed her complaint in New Jersey does not answer the question whether we should order her case to be transferred so she can be so governed now.
 
 
 29
 I note in this regard that plaintiff's argument would entitle her not only to this change of forum, but perhaps to a second, third, or ninth change. The prospect of a defendant being dragged to several different fora while a plaintiff searches for the most hospitable law is singularly unattractive. As with the inquiry into the relative "justice" of different state's laws, I am unwilling to believe that Congress created such an entitlement when it passed Sec. 1404.
 
 
 30
 For these reasons I would hold that changes in substantive law cannot be a basis for a motion to transfer under Sec. 1404(a). On that ground I would affirm the district court's refusal to transfer this case, as well as the dismissal which must follow if the case is governed by the Pennsylvania statute of limitations.
 
 
 
 [1]
 Section 1404(a) provides that:
 For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.
 
 
 [2]
 It is beyond cavil that a federal district court sitting in diversity must follow the forum's choice of law rules to determine the applicable statute of limitations period. See Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). Pennsylvania courts will ordinarily apply the Pennsylvania statute of limitations period, unless 42 Pa.C.S.A. Sec. 5221 (Purdon 1981), Pennsylvania's "borrowing statute," is applicable. Jones & Laughlin Steel Corp. v. Johns-Manville Sales Corp., 626 F.2d 280, 290 n. 23 (3d Cir.1980) (citing Freeman v. Lawton, 353 Pa. 613, 46 A.2d 205 (1946)). The borrowing statute is only applicable where the law of the jurisdiction in which the claim arose bars the claim sooner than the law of the forum
 
 
 [3]
 The precedential value of this plurality opinion is discussed in McGowan v. University of Scranton, 759 F.2d 287, 293 (3d Cir.1985)
 
 
 [4]
 Deleski also claimed loss of consortium. Because the limitations period for loss of consortium claims is coextensive with the limitations period for the underlying injury to the spouse, Cathcart v. Keene Industrial Insulation, 324 Pa.Super. 123, 140, 471 A.2d 493, 502 (1984), Deleski's loss of consortium claim is barred pursuant to the principles enunciated in pp. 379-380
 
 
 [5]
 We note that, although these issues were raised in Deleski's complaint, they were not discussed by the judge below and not briefed by either party on appeal. We reach them here because we believe that the viability of this portion of the plaintiff's complaint is germane, although certainly neither conclusive nor dispositive, to the core question we review today: whether or not the transfer of this case to the District of New Jersey would be in the "interest of justice."
 
 
 [1]
 A number of courts have addressed the question reserved by the Supreme Court. Most have held that the substantive law of the transferor forum should apply. See, e.g., Gonzalez v. Volvo of America, 734 F.2d 1221 (7th Cir.1984); Roofing Sheet Metal Services, Inc. v. La Quinta Motor Inns, 689 F.2d 982 (11th Cir.1982); Martin v. Stokes, 623 F.2d 469 (6th Cir.1980). But see O'Brien v. Lake Geneva Sugar Shack, Inc., 585 F.Supp. 273 (N.D.Ill.1984), and 15 Charles Allen Wright, et al. Federal Practice and Procedure Sec. 3846 at 367 (2d ed. 1986), which advocate the contrary rule
 
 
 [2]
 A desire to circumvent procedural technicalities must be distinguished from a desire to escape unfavorable, and perhaps seemingly arbitrary, governing law. In Goldlawr, Inc. v. Heiman, 369 U.S. 463, 467, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962), for example, the Court distinguished "time-consuming and justice-defeating technicalities," which it is good to circumvent, from statutes of limitations, about which plaintiffs must be diligent