

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-7-2006

# Duvall v. Atty Gen USA

Precedential or Non-Precedential: Precedential

Docket No. 04-4412

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Duvall v. Atty Gen USA" (2006). *2006 Decisions*. Paper 1518.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1518

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 04-4412

_____

ANDREA PATRICIA DUVALL,
(Nee Andrea Patricia Phillips)

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,*

Respondent

_____

Initially docketed as an Appeal from the
United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 04-cv-03483)
District Judge:  Honorable Michael M. Baylson

_____

*Because we have converted the present appeal into a petition for direct review, we are required to substitute the Attorney General for the respondent (William F. Riley, Jr., District Director, Bureau of Immigration Customs Enforcement).  8 U.S.C. § 1252(b)(3)(A).

Converted to a Petition for Review from the
Board of Immigration Appeals
Pursuant to the Real ID Act of 2005
(Board No. A 71 041 214)
Immigration Judge Walt Durling

————

Argued December 7, 2005
Before:  RENDELL, FISHER and
GREENBERG, *Circuit Judges*.

(Filed: February 7, 2006)

Anthony A. Yang (Argued)
United States Department of Justice
Appellate Section
950 Pennsylvania Avenue, N.W.
Room 7248
Washington, DC  20530

Robert M. Loeb
United States Department of Justice
Civil Division, Appellate Staff
601 D Street, N.W.
Room 9149
Washington, DC  20530
        *Attorneys for Respondent*

Derek W. Gray (Argued)
Steel, Rudnick & Ruben
1608 Walnut Street, Suite 1500
Philadelphia, PA  19103
     *Attorney for Petitioner*

---

## OPINION OF THE COURT

---

FISHER, *Circuit Judge*.

We must decide in this case whether a litigation error by the Immigration and Naturalization Service, resulting in an adverse determination on the issue of alienage during deportation proceedings, precludes the government from thereafter seeking to remove the alien based on subsequent criminal acts.  We conclude that it does not.

### I.

### A.

Andrea Patricia Duvall is a native and citizen of Jamaica.  She entered this country on a valid tourist visa in 1987, as a "visitor for pleasure."  She later married a United States citizen and applied for adjustment of status to lawful permanent resident.  Her request was granted, and she became a permanent resident in 1993.

Her days in this country were not all tourism and romance, however. Between 1987 and 1993, Duvall committed a series of retail thefts and petty larcenies in New Jersey, New York, and Pennsylvania. These transgressions resulted in numerous arrests and eleven convictions by state authorities.

Soon thereafter, the INS initiated deportation proceedings against Duvall. She was charged as an alien subject to deportation based on convictions of crimes involving moral turpitude, 8 U.S.C. § 1227(a)(2)(A)(ii). A hearing was held before an immigration judge on November 16, 1993.

The sole witness called by the INS was Duvall. Counsel for the government asked her to confirm her place of birth and citizenship. She refused. She asserted a privilege against self-incrimination under the Fifth Amendment and would neither confirm nor deny any of the allegations in the order to show cause.[1]

The INS was caught off guard by this maneuver. Counsel sought to introduce into evidence Duvall's application for adjustment of status, in which she admitted to being a native and citizen of Jamaica; however, the document was ruled inadmissible for noncompliance with local rules requiring submission of evidence at least ten days before the hearing. The INS had no other means by which to prove Duvall's alienage,

---

[1]Duvall argued that the answers to these questions would expose false statements in her application for adjustment of status, providing grounds for criminal prosecution.

4

and rested its case. Predictably, the immigration judge found that there was not "clear, unequivocal, and convincing evidence" to establish alienage. He accordingly terminated the proceedings.

The INS sought review of the decision by the Board of Immigration Appeals, but subsequently withdrew the appeal, for reasons that are not explained in the record. The decision of the immigration judge, terminating the proceedings, remains the dispositive order in the case.

B.

The brush with deportation did not deter Duvall. She continued her criminal exploits and was convicted twice, in 1995 and 2001, of felony retail theft under Pennsylvania law. While incarcerated, Duvall was interviewed by an INS official. She admitted in a sworn statement that she was a citizen of Jamaica and an alien in this country.

Within days of this admission, the INS again initiated deportation proceedings against Duvall. She was charged, based on her encounters with law enforcement in 1995 and 2001, as an alien subject to removal for convictions of an aggravated felony, 8 U.S.C. § 1227(a)(2)(A)(iii), and crimes involving moral turpitude, 8 U.S.C. § 1227(a)(2)(A)(ii).

Removal proceedings were terminated in June 2001. The presiding immigration judge, on motion of Duvall's counsel, held that the INS was collaterally estopped from relitigating the issue of alienage because it had enjoyed a full and fair

5

opportunity to litigate the matter in the 1993 proceedings. The INS, the judge held, was bound by the prior determination that there was insufficient evidence to establish Duvall's alienage.

The Board of Immigration Appeals reversed. It held that collateral estoppel should be applied "more flexibly" in the immigration context and that several factors militated against imposing a bar to relitigation in these circumstances. First, the INS had been prevented in the prior proceedings – albeit as a result of its own failure to comply with local rules – from introducing evidence of alienage. Second, the burden of proof on the INS had changed between the first and second proceedings: from "clear, unequivocal and convincing" evidence to "clear and convincing" evidence.[2] Finally, the Board determined that application of the doctrine in this case, where the alien had committed additional deportable offenses following initial removal proceedings, would contravene congressional intent.

---

[2]The Board did not explain the difference between these standards, but simply stated that the new standard was a lesser burden.

On remand, the immigration judge allowed the INS[3] to present evidence of Duvall's alienage and found, by clear and convincing evidence, that Duvall was an alien subject to removal based on her 1995 and 2001 convictions. The order of removal was later affirmed by the Board.

## C.

Duvall then filed a petition for writ of habeas corpus in the District Court for the Eastern District of Pennsylvania.[4] She renewed her argument that, under common law principles of collateral estoppel, the INS was precluded from relitigating the issue of alienage.

---

[3]On March 1, 2003, after the Board had remanded the case to the immigration judge, the INS ceased to exist and its interior enforcement functions were transferred to the Bureau of Immigration and Customs Enforcement ("BICE"), within the Department of Homeland Security. *See* Homeland Security Act, Pub. L. No. 107-296, § 441, 116 Stat. 2135, 2192 (2002). For purposes of this discussion, the BICE will be referred to as the INS.

[4]Duvall had previously filed a petition for writ of habeas corpus, after the Board had remanded the case to the immigration judge. That petition was eventually dismissed for lack of jurisdiction because Duvall had not yet exhausted administrative remedies. *Duvall v. Elwood*, 336 F.3d 228, 229-34 (3d Cir. 2003).

7

The District Court agreed. It held that the government's failure to satisfy its burden of proof on alienage during the 1993 proceedings collaterally estopped it from raising the issue again. The District Court concluded that, "although . . . it [is] manifestly unfair to the government to be foreclosed from proving [Duvall's] alienage, the issue of fairness is not determinative on the doc[tr]ine of collateral estoppel." A writ of habeas corpus was granted in September 2004.

This timely appeal followed.

II.

The threshold issue is the nature of our jurisdiction. When the District Court issued its decision, a challenge to an order of removal could be raised in a petition for writ of habeas corpus under 28 U.S.C. § 2241. *See INS v. St. Cyr*, 533 U.S. 289, 292 (2001). This is no longer the case. The Real ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, enacted while this appeal was pending, divests district courts of jurisdiction over these matters. *Id.* § 106. The sole means by which an alien may now challenge an order of removal is through a petition for review directed to the court of appeals. *See Jordon v. Attorney General*, 424 F.3d 320, 326-28 (3d Cir. 2005).

A petition for writ of habeas corpus challenging an order of removal, pending on the date of the Act's enactment, is to be converted to a petition for review and transferred to the appropriate court of appeals. Real ID Act § 106(c). We held in *Bonhometre v. Gonzales*, 414 F.3d 442 (3d Cir. 2005), that, despite the absence of express statutory guidance, a similar

8

practice should govern pending appeals involving district court decisions granting habeas relief from an order of removal. *Id.* at 446.

We follow this approach here. The notice of appeal will be converted to a petition for review, *see id.*, the Attorney General will be substituted as the respondent in this case, *see* 8 U.S.C. § 1252(b)(3)(A), and the decision of the District Court, now rendered a nullity, will be vacated, *see Jordon*, 424 F.3d at 326-28. We have jurisdiction to consider the decision of the Board of Immigration Appeals under 8 U.S.C. § 1252(b)(2), and exercise plenary review over questions of law, with due deference to the agency's interpretation of the Immigration and Naturalization Act (INA). *Jordon*, 424 F.3d at 326-28; *see also Kamara v. Attorney General*, 420 F.3d 202, 211 (3d Cir. 2005).

## III.

Turning to the merits, the sole substantive question in this appeal is whether the doctrine of collateral estoppel bars the INS from relitigating the issue of alienage against Duvall. There are two aspects to the inquiry. The first is whether the agency is required to apply the doctrine *imprimis*. The second is, if so, how the doctrine should be applied in this case.

## A.

It is not the prerogative of the federal courts to impose upon administrative agencies procedural doctrines or rules of decision, whatever their historical pedigree. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991); *Vt. Yankee*

*Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435
U.S. 519, 524-25, 542 (1978).  Congress has discretion, based
on its own weighing of policy goals, to prescribe the procedures
by which an agency will perform its work and render decisions.
*Astoria*, 501 U.S. at 108.  The only constraint on this authority
is the Constitution, embodied primarily in the requirement of
"due process."  *See id.*; *see also Landon v. Plasencia*, 459 U.S.
21, 34-35 (1982).

Collateral estoppel is not constitutionally mandated, *see
Astoria*, 501 U.S. at 108, and, as such, the question of whether
an agency must apply the doctrine is to be answered by
reference to the enabling statute.[5]  Only if Congress required the
agency to apply collateral estoppel may the federal courts
enforce that obligation.  *See id.*

A cursory review of the INA shows that the doctrine is
not explicitly prescribed.  Nowhere does the Act use the phrase
"collateral estoppel," "res judicata," "issue preclusion," or
"claim preclusion," and nowhere does the Act expressly bar the
agency from relitigating issues previously decided.

---

[5]Substantive due process may offer some protection
against repeated relitigation of the same issue by an
administrative agency.  *E.g.*, *Babcock & Wilcox Co. v. Marshall*,
610 F.2d 1128, 1138 & n.34 (3d Cir. 1979).  This case, in which
the two proceedings were separated by seven years and were
based on distinct criminal acts, does not implicate these
concerns.  *See id.*

10

But the absence of discussion cannot be viewed as dispositive. Congress is expected to legislate against the backdrop of well-established common law principles. *Id.* at 108-11. An accepted common law doctrine should be implied in a statutory scheme, despite the absence of express authorization, if application of the doctrine is consistent with the structure and purpose of that scheme. *Id.*

Collateral estoppel has been recognized by the Supreme Court as one of these well-established common law principles. *Id.* at 107-08 (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979)). It has long been employed as a means of ensuring repose. *Id.*

> Such repose is justified on the sound and obvious principle . . . that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution.

*Id.* Congress may be presumed, when enacting a statute granting to an agency adjudicatory authority, to mandate adherence to the doctrine of collateral estoppel. *Id.*

The INA grants adjudicatory authority to immigration judges and the Board of Immigration Appeals. These entities

11

are charged with resolving factual and legal disputes based on an evidentiary record developed by the parties following notice and a hearing.  8 U.S.C. § 1229a(b), (c).  These functions are inherently judicial in nature, and properly subject to principles of issue preclusion.  *See, e.g.*, *United States v. Utah Constr. & Min. Co.*, 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolved disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose.").  Therefore, the INA will be read to incorporate principles of collateral estoppel if application of the doctrine does not frustrate congressional intent or impede the effective functioning of the agency.  *Astoria*, 501 U.S. at 108-11; *Utah Constr.*, 384 U.S. at 422.

The structure of the INA is consistent with collateral estoppel.  The Act establishes an adversarial system under which the parties bear different burdens of proof with respect to various issues.  8 U.S.C. § 1229a(b), (c).  The INS bears the burden of proving, by "clear and convincing" evidence, that the individual is an alien and is subject to deportation.  *Id.* § 1229a(c)(3)(A).  Only if the INS satisfies this burden, based on evidence presented at a hearing, may the immigration judge issue an order authorizing removal.  *Id.* § 1229a(c)(1)(A).

Imposition of this burden would be rendered largely meaningless if the INA is not interpreted to incorporate principles of collateral estoppel.  Failure to satisfy the burden of proof at one hearing before one immigration judge would have no effect on the government's ability to bring successive proceedings in front of successive immigration judges.  The

12

same evidence could be introduced and the same witnesses could be interrogated, over and over, until the desired result is achieved. Despite the congressional command that the INS bears the burden of proving removability based on evidence offered during a single immigration hearing, *see id.* § 1229a(c), the INS would have no real incentive to marshal all of its evidence or present its best case against an individual. If it loses in one hearing, it may simply reinitiate the process – repeatedly if necessary.

Collateral estoppel would prevent this result. It would require, consistent with the INA, that the INS present all available evidence against the individual during a single hearing. Only if the INS can do so, and satisfy its burden of proof, will it be entitled to an order of removal. *See id.* § 1229a(c)(1)(A).

Indeed, the INA itself recognizes that collateral estoppel will be applied in immigration proceedings. One section of the Act, 8 U.S.C. § 1228, allows the United States to request an order of removal from a federal judge during criminal proceedings involving an alien convicted of an aggravated felony. *Id.* The statute notably clarifies that "[d]enial of a request for a judicial order of removal shall not preclude the [INS] from initiating removal proceedings . . . upon the same ground of deportability or upon any other ground of deportability." *Id.* § 1228(c)(4). In other words, the Act expressly provides that collateral estoppel does not apply in this circumstance. There would be no reason for Congress to include this provision unless it anticipated that the doctrine would otherwise apply in proceedings under the INA.

13

Any possible ambiguity in the congressional language may be resolved by reference to agency practice, which supports incorporation of common law principles of preclusion. The Board of Immigration Appeals recognized in *In re Fedorenko*, 19 I. & N. Dec. 57 (BIA 1984), that the "judicially-developed doctrine of collateral estoppel" applies in immigration proceedings. *See id.* at 61. This conclusion reflects the agency's understanding that application of common law collateral estoppel does not contravene the language of the INA or congressional intent. This interpretation of the statute is entitled to deference. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999); *see also Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984).

It also accords with other opinions and authorities. The Court of Appeals for the Ninth Circuit held, in *Ramon-Sepulveda v. INS*, 824 F.2d 749 (9th Cir. 1987) (per curiam), that a failure of proof on the issue of alienage collaterally estops the INS from relitigating the issue in subsequent proceedings. *Id.* at 750-51. A similar conclusion was reached in *Medina v. INS*, 993 F.2d 499 (5th Cir. 1993), in which the Court of Appeals for the Fifth Circuit determined that collateral estoppel was consistent with the INA and that the doctrine precludes relitigation of an individual's citizenship if the issue was conceded by the INS during a prior proceeding. *Id.* at 502-504 & n.15. The same position is echoed elsewhere.[6]

---

[6]*See Hamdan v. Gonzales*, 425 F.3d 1051, 1059-60 (7th Cir. 2005); *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 703-04 (6th Cir. 2005); *Johnson v. Ashcroft*, 378 F.3d 164, 172 n.10 (2d

14

Cir. 2004); *Kairys v. INS*, 981 F.2d 937, 939-41 (7th Cir. 1992); Nat'l Immigration Project of the Nat'l Law. Guild, *Immigration Law and Defense* § 7:73 (3d ed. 2004) ("[A]n immigration judge's order terminating deportation proceedings for failure to prove alienage has been held to be res judicata in later deportation proceedings against the same person."); *see also* Restatement (Second) of Judgments § 83 (1982) ("[A] valid and final adjudicative determination by an administrative tribunal has the same effects under the rules of res judicata, subject to the same exceptions and qualifications, as a judgment of a court."); 18 James Wm. Moore et al., *Moore's Federal Practice–Civil* § 132.03[e] (3d ed. 2001) ("Issues of fact litigated and decided in a prior administrative proceeding may have issue preclusive effect on issues of fact presented in a subsequent administrative or judicial action."); Charles H. Koch, Jr., *Administrative Law & Practice* § 5.72[1] (2d ed. 1997) ("The doctrines of res judicata and collateral estoppel are applicable to administrative proceedings when an agency is acting in a judicial capacity."); *cf. Cook v. Principi*, 318 F.3d 1334, 1337 (Fed. Cir. 2002) (applying res judicata to administrative proceedings); *Jones v. SEC*, 115 F.3d 1173, 1178 (4th Cir. 1997) (same); *SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1463-64 (2d Cir. 1996) (same). *But cf. Title v. INS*, 322 F.2d 21, 23-24 (9th Cir. 1963) (rejecting application of doctrine to preclude alien from relitigating issue of membership in communist party, previously resolved in denaturalization proceedings), *rejected by Kairys*, 981 F.2d at 939-41, *and distinguished by Fedorenko*, 19 I. & N. Dec. at 62-64 ("[W]e do not violate Congress' intent if we apply collateral estoppel to the

15

No case is to the contrary. The Supreme Court in *Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519 (1978), held that the federal courts cannot impose procedural requirements on an agency beyond those required under the governing statute (in that case, the Administrative Procedures Act, 5 U.S.C. § 553), *see Vt. Yankee*, 435 U.S. at 525, but it did not discuss whether a particular common law doctrine should be "read into" a legislative scheme and thereby made statutorily binding upon the agency. In *Pearson v. Williams*, 202 U.S. 281 (1906) (Holmes, J.), the Court concluded that principles of collateral estoppel did not prevent the immigration service from instituting deportation proceedings after initially granting an alien permission to enter the country, *see id.* at 283-85, but this decision was based primarily on the limited scope and non-adjudicative nature of the entry examination, *see id.*, attributes that are not shared by modern removal hearings. *Cf. Astoria*, 501 U.S. at 110 (limiting *Pearson* to its facts); *Utah Constr.*, 384 U.S. at 421-22 & n.19 (same). Those opinions that have held that collateral estoppel does not apply in a particular administrative context have been premised on language in the governing statute expressing a contrary intent, language which does not appear in the INA. *See Astoria*, 501 U.S. at 110 (citing *Univ. of Tenn. v. Elliott*, 478 U.S. 788 (1986)); *see also Wallace Corp. v. NLRB*, 323 U.S. 248, 253 (1944).

The INS nevertheless argues that, even if preclusion principles should be read into the INA, collateral estoppel

---

respondent's denaturalization judgment.").

16

should bar relitigation of an issue only in subsequent proceedings in the federal courts – not in proceedings within the agency itself. It stresses that the decisions in which the Supreme Court has discussed the doctrine, particularly *Astoria Federal Savings & Loan Association v. Solimino*, 501 U.S. 104 (1991), involved cases brought in federal court following an adverse agency determination. *See id.* at 106-07. On this premise, the INS posits that decisions of the agency should be given estoppel effect only in subsequent judicial proceedings.

There is no basis for this distinction. The doctrine of collateral estoppel has long been understood to apply in all proceedings that may be deemed "adjudicative," no matter whether the governing entity is a "court" or an "agency." *See Utah Constr.*, 384 U.S. at 421-22 & n.20 (citing 2 Kenneth Culp Davis, *Administrative Law Treatise* §§ 18.01-18.12 (1958); I. Groner & H. Sternstein, *Res Judicata in Federal Administrative Law*, 39 Iowa L. Rev. 300 (1954)); *United States v. Int'l Bldg. Co.*, 345 U.S. 502, 504-05 (1953); *Comm'r v. Sunnen*, 333 U.S. 591, 597-99 (1948); *see also Pearson*, 202 U.S. at 284-85.[7] The adversarial system of dispute resolution established in the INA is plainly adjudicatory in character and susceptible to full

_____

[7]*See also* Restatement (Second) of Judgments § 83 cmt. a ("[Collateral estoppel] applies when a final adjudicative determination by an administrative tribunal is invoked as the basis of claim or issue preclusion in a subsequent action, whether that subsequent action is another proceeding in the same administrative tribunal or is a proceeding in some other administrative or judicial tribunal.").

17

application of common law principles of preclusion. *See, e.g.*, Restatement (Second) of Judgments § 83. Nothing in the statute or the legislative history – nor any authority of which this Court is aware – suggests that collateral estoppel should bar relitigation in proceedings before the federal courts, but not in proceedings before the agency itself. *Accord Hamdan v. Gonzales*, 425 F.3d 1051, 1059-60 (7th Cir. 2005); *Santana-Albarran v. Ashcroft*, 393 F.3d 699, 703-04 (6th Cir. 2005); *Medina*, 993 F.2d at 503-04; *Ramon-Sepulveda*, 824 F.2d at 750; Restatement (Second) of Judgments § 83, *cited with approval in Elliott*, 478 U.S. at 798 n.6; Charles H. Koch, Jr., *Administrative Law & Practice* § 5.72 (2d ed. 1997); 18 James Wm. Moore et al., *Moore's Federal Practice–Civil* § 132.03[e] (3d ed. 2001).

Requiring the INS to meet its burden of proof at a single hearing is consistent with the statutory scheme, as interpreted by the administering agency, *see Fedorenko*, 19 I. & N. Dec. at 61, and will not frustrate the goals of Congress. The "lenient presumption in favor of administrative estoppel" holds, *see Astoria*, 501 U.S. at 108, and the INA will be held to incorporate common law principles of collateral estoppel.

## B.

The question then becomes how the doctrine should be applied in this case. Courts and commentators have consistently recognized that collateral estoppel was borne of equity and is therefore "flexible," bending to satisfy its underlying purpose in light of the nature of the proceedings. *See Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n*, 288 F.3d 519, 528 (3d Cir.

18

2002). In other words, "[a]lthough [collateral] estoppel is favored as a matter of general policy, its suitability may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures." *Astoria*, 501 U.S. at 110 (citing *Pearson*, 202 U.S. at 285).

The flexibility of the doctrine is recognized in the several "exceptions" enumerated by the Restatement (Second) of Judgments. *See Nat'l R.R.*, 288 F.3d at 525 & n.3 (citing Restatement (Second) of Judgments § 28). Collateral estoppel generally applies when the same issue was previously litigated by the same parties and was actually decided by a tribunal of competent jurisdiction. *E.g.*, *Burlington N. R.R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231-32 (3d Cir. 1995). However, it will not preclude relitigation of the issue when there is a substantial difference in the procedures employed by the prior and current tribunals, a material intervening change in governing law or the burden of persuasion, or a "clear and convincing need for a new determination of the issue . . . because of the potential adverse impact of the determination on the public interest." *Nat'l R.R.*, 288 F.3d at 525 n.3 (quoting Restatement (Second) of Judgments § 28). Collateral estoppel in the administrative context must be informed by considerations of agency structure and legislative policy. *See, e.g.*, *Kairys*, 981 F.2d at 939-41; Koch, *supra*, § 5.72[1]; 18 Moore et al., *supra*, § 12.30[e]; *see also* Restatement (Second) of Judgments § 83.

These considerations counsel against application of the doctrine in this case. A primary goal of several recent overhauls of the INA has been to ensure and expedite the removal of aliens convicted of serious crimes. *See, e.g.*, Real ID Act § 106;

19

Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, §§ 423, 440, 442, 110 Stat. 1214, 1272, 1276-80; Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 321, 110 Stat. 3009-627; *see also Leocal v. Ashcroft*, 125 S. Ct. 377, 379 n.1 (2004) (examining history of enactments). This intent pervades the statutory provisions, which not only establish special proceedings to handle such cases but also largely insulate orders of removal against criminal aliens from judicial review. *See* 8 U.S.C. §§ 1228, 1252; *see also id.* § 1226(c)(1) (providing for mandatory detention of criminal aliens).

To apply the doctrine in a case such as this, where a clearly deportable alien continues to commit criminal acts after initial proceedings are terminated, would frustrate this statutory purpose. It would effectively preclude the INS from ever relitigating the issue of alienage or ever securing removal, despite the alien's ongoing criminal conduct. *See* 8 U.S.C. §§ 1101(a)(3), 1229a(c) (defining alienage as an essential element of any charge of removability). The alien could flout any rule or commit any offense without fear of deportation. *See* Nat'l Immigration Project of the Nat'l Law. Guild, *Immigration Law and Defense* § 7:73 (3d ed. 2004) (characterizing the alien as being in a "nondeportable state"). This prospective immunization against removal is plainly contrary to congressional intent.

Legislative policy dictates that the bar against relitigation must drop when the alien continues to commit criminal acts after initial immigration proceedings. Nothing in the INA implies that collateral estoppel should be applied in this circumstance,

20

and, as discussed previously, there is every reason to infer that Congress intended the contrary.[8] *See, e.g.*, 8 U.S.C. §§ 1228, 1252 (providing for expedited removal of aliens convicted of serious crimes).

The immigration judge in the 1993 proceedings did not find that Duvall was a citizen of the United States or that she was entitled to remain in this country. He did not doubt that Duvall was, in fact, an alien or that she was subject to removal. Rather, he merely terminated proceedings when the INS unexpectedly found itself unable to secure answers from Duvall regarding her birthplace or to introduce evidence – available but inadmissible under local procedural rules – that could have satisfied its burden of proof on the issue of alienage. *Cf. Medina*, 993 F.2d at 502-04 & n.15 (holding that the INS was collaterally estopped from relitigating the issue of citizenship when an immigration judge had expressly found in prior proceedings that the individual was a citizen).

The termination of those proceedings had limited collateral effect. Duvall had not been granted citizenship and was undoubtedly deportable. She remained in the United States not by any affirmative entitlement, but by virtue of a simple litigation error. Her subsequent convictions demonstrated,

---

[8]We do not suggest, by holding that collateral estoppel does not bar relitigation in these cases, that it necessarily does bar relitigation in others. Different legislative policies, which are not implicated here, may counsel against application of the doctrine in other situations.

21

beyond doubt, that her continued presence in this country contravened congressional intent and that continued application of the doctrine of collateral estoppel was unwarranted. There was thereafter no bar to relitigation of Duvall's alienage or to entry of the order of removal.

## IV.

The government's failure to prove alienage during the 1993 proceedings granted Duvall a conditional reprieve from deportation. But it did not grant her an absolute pardon. Her protection lasted only for so long as she adhered to the laws of this country. She failed to do so, and was thus no longer entitled to the benefits of collateral estoppel. Deportation proceedings were properly commenced, and the order of removal was properly entered, based on Duvall's criminal convictions in 1995 and 2001.

Accordingly, the order of the District Court will be vacated and the petition for review will be denied.